IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



DIE K. BLAISE,

    Plaintiff,

v.                      Civil Action No. 3:16CV0023

SANDRA HARRIS, and
VIBRA HOSPITAL OF RICHMOND, LLC

    Defendants.

**MEMORANDUM OPINION**

This matter is before the Court on Defendants' MOTION TO DISMISS (Docket No. 10). For the reasons stated below, Defendants' MOTION TO DISMISS will be granted. (Docket No. 10).

**BACKGROUND**

The Complaint states that Die K. Blaise ("Blaise") was a pharmacist at Vibra Hospital of Richmond, LLC ("Vibra") beginning on May 20, 2013. (Compl. 1). On September 1, 2013, Vibra replaced its pharmacy entry system. (Compl. 2). Blaise states that all pharmacists other than himself were trained extensively in the new system, and that, as a result of Blaise's abbreviated training, "it took a little[] longer to process some medication orders" using the new system. (Compl. 3). The training program notwithstanding, "[m]edication errors [were] a system wide issue" after the system switch. (Compl. 3). During the transition to the new system, the Director of Pharmacy, Dr.

Sandra Harris ("Harris") began to schedule other pharmacists more frequently and to schedule Blaise less frequently. (Compl. 3).

On December 18, 2013, Blaise's employment was terminated for "medication errors." (Compl. 1-2). Blaise states that these "medication errors" were fabricated by Harris to "terminate [Blaise's] position as a pharmacist" and "to dilute a discrimination case" (Compl. 2), and that any medication errors that did occur also occurred for other pharmacists who were not fired. (Compl. 2-3).

At an unspecified point, Harris filed a complaint with the Virginia Board of Pharmacy based on Blaise's performance at Vibra. (Compl. 2). The Board of Pharmacy notified Blaise of Harris's complaint on February 27, 2015. (Compl. 2). Blaise states that he was never accused of patient safety concerns while at Vibra. (Compl. 2).

On August 4, 2015, Blaise filed a charge of discrimination with the EEOC. The Complaint states that the EEOC issued a Right to Sue notice on December 28, 2015. (Compl. 2).[1]

On January 12, 2016, Blaise filed a Motion to Proceed In Forma Pauperis and a proposed Complaint. (Docket No. 1). On

---

[1] That document, filed with the Complaint as Appendix B, states that the EEOC complaint was not timely filed. (Docket No. 5, Ex. B, 2).

2

March 17, 2016, Blaise paid the civil filing fee (Docket No. 4) and filed his Complaint (Docket No. 5).

The Complaint alleges four claims, titled "Harassments," "Race, Color, and National Origin," "Disability," and "Vibra Hospital of Richmond Violates its own policy." (Compl. ¶ 3-4).

Harris and Vibra (collectively "Defendants") filed this motion to dismiss under Fed. R. Civ. P. 12(b)(6) (Docket No. 10) on several grounds, including that all claims are time-barred, that Blaise has not pled membership in a protected class, and that Harris is not liable in her individual capacity. (Def.'s Mem. in Supp. of Def.'s Mtn. to Dismiss, Docket No. 11) ("Def.'s Mem.").

**LEGAL STANDARD**

**A. Pro Se Litigants Are Entitled to Liberal Construction**

As a threshold matter, the Court recognizes that Blaise's pro se status entitles his pleadings to a liberal construction. See, e.g., Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). Nevertheless, "[e]ven pro se plaintiffs must recognize Rule 8's vision for 'a system of simplified pleadings that give notice of the general claim asserted, allow for the preparation of a basic defense, narrow the issues to be litigated, and provide a means for quick dispositions of sham claims." Sewraz v. Guice, 2008 WL

3

3926443, at *2 (E.D. Va. Aug. 26, 2008) (quoting Prezzi v. Berzak, 57 F.R.D. 149, 151 (S.D.N.Y. 1972)). The requirement of liberal construction 'does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. Skelton v. EPA, 2009 WL 2191981, at *2 (D.S.C. July 16, 2009) (citing Weller v. Dept. of Soc. Servs., 901 F.2d 387 (4th Cir. 1990)). Finally, the basic pleading standards set by Bell Atlantic v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009) that foreclose conclusory, factually unsupported claims apply to pro se litigants.

**B. Fed. R. Civ. P. 12(b)(6)**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the legal sufficiency of a complaint. Jordan v. Alternative Resources Corp., 458 F.3d 332, 338 (4th Cir.2006). Fed. R. Civ. P. 8(a)(2) "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir. 2015) (citing Twombly, 550 U.S. at 555).

When deciding a motion to dismiss under Rule 12(b)(6), a court must "draw all reasonable inferences in favor of the plaintiff." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,

4

591 F.3d 250, 253 (4th Cir. 2009). However, while the court must "will accept the pleader's description of what happened" and "any conclusions that can be reasonably drawn therefrom," the court "need not accept conclusory allegations encompassing the legal effects of the pleaded facts," **Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure** § 1357 (3d ed.1998); Chamblee v. Old Dominion Sec. Co., L.L.C., No. 3:13CV820, 2014 WL 1415095, *4 (E.D. Va. 2014). Nor is the court required to accept as true a legal conclusion unsupported by factual allegations. Iqbal, 556 U.S. at 678-79. "Twombly and Iqbal also made clear that the analytical approach for evaluating Rule 12(b)(6) motions to dismiss requires courts to reject conclusory allegations that amount to mere formulaic recitation of the elements of a claim and to conduct a context-specific analysis to determine whether the well-pleaded factual allegations plausibly suggest an entitlement to relief." **Wright & Miller**, supra; Chamblee, supra.

## ANALYSIS

**A.   Harassment**

The first count, labeled "Harassment," alleges that Blaise's supervisor, Harris,

> made my work environment so uncomfortable and hostile that [I] was prone to mistake. Harassments include offensive remarks and frequent phone calls in respect to overtime ... Harris regularly ... asked me to leave

5

> at the end of my shift regardless of the workload to be completed. This cause[d] me to rush to complete the daily tasks and result[ed] in unsafe patient care ... [Harris] never treated the other pharmacist Mr. Robert Swendrznski the same way as she [treated] me.

(Compl. 3). As Defendants note, a liberal interpretation of Blaise's Complaint indicates that he is stating a Title VII claim for harassment or discrimination, or a racial discrimination claim under § 42 U.S.C. 1981. (Def.'s Mem. 1-2).

### 1. Title VII Harassment

Any Title VII claim is time-barred. In order for a plaintiff to pursue a Title VII claim in federal court in Virginia, a charge must be filed with the EEOC within 300 days of the date on which the "alleged unlawful employment practice occurred." See 42 U.S.C. § 2000e-5(e)(1); Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 440 (4th Cir. 1998). Blaise was terminated on December 18, 2013, and did not file with the EEOC until August 4, 2015. (Compl. 1-2), well beyond the 300 day time limit. (See also Docket No. 5, Ex. B, 2) (EEOC letter stating that complaint with agency was filed too late). To the extent that Blaise seeks to present a Title VII harassment claim, his claim is time-barred.

Blaise acknowledges that his EEOC filing fell outside the 300 day period, but argues that the statute of limitations was tolled for his Title VII harassment claim. The Fourth Circuit

has held that equitable tolling is permissible when the "employee's failure to timely file results from either a 'deliberate design by the employer or actions that the employer should unmistakably have understood would cause the employee to delay filing his charge.'" Olson v. Mobil Oil Corp., 904 F.2d 198, 201 (4th Cir. 1990) (quoting in part Price v. Litton Business Systems, Inc., 694 F.2d 963, 965 (4th Cir.1982)). See also Chao v. Virginia Dep't of Transp., 291 F.3d 276, 283 (4th Cir. 2002) (stating that the statute of limitations may be tolled "'where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.'") (quoting Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96 (1990)). Nevertheless, even an employer's duplicity does not excuse employees from the obligation to pursue their rights to the extent that doing so remains reasonably possible. See Chao, 291 F.3d at 283 ("Equitable tolling is not appropriate ... 'where the claimant failed to exercise due diligence in preserving his legal rights.'") (quoting in part Irwin, 498 U.S. at 96, 111 S.Ct. 453); Kokotis v. United States Postal Service, 223 F.3d 275, 280 (4th Cir. 2000).

In this case, there is no allegation of duplicity by the Defendants. Blaise states that his claim for harassment based on Harris's "offensive remarks," "frequent phone calls," scheduling, and reprimands (Compl. 3), conduct of which Blaise

7

was necessarily aware, and which he could and should have reported to the EEOC within 300 days.

Blaise is not entitled to equitable tolling. Therefore, to the extent that Blaise's Complaint intends to assert a claim for Title VII harassment, it will be dismissed with prejudice.

### 2. § 1981

To state a prima facie case for racial harassment which created a hostile work environment under 42 U.S.C. § 1981, a plaintiff must state facts establishing that: (1) plaintiff experienced unwelcome harassment; (2) the harassment was based on race; (3) the harassment was sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive atmosphere, and (4) there is a basis for imputing the conduct to the employer and thus imposing liability on the employer. Reed v. Airtran Airways, 531 F. Supp. 2d 660, 668-69 (D. Md. 2008) (relying on Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) for elements of racial harassment claim); see also James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 376 (4th Cir. 2004) (noting that plaintiffs must satisfy the same elements to establish a claim for racial discrimination under either Title VII or § 1981).

A plaintiff may establish the second element of harassment based on race either: (1) through the "direct" method, with evidence of intentional discrimination such as discriminatory

statements; or (2) through the "prima facie" method of pleading membership in a protected class and also pleading different treatment from similarly situated employees outside the protected class. E.g., Hinton v. Virginia Union Univ., No. 3:15CV569, 2016 WL 2621967, at *5-6 (E.D. Va. May 5, 2016).

Blaise fails to state the second element of a § 1981 harassment claim. First, Blaise fails to state the second element of a § 1981 harassment claim because his Complaint is absolutely devoid of any mention of his race or of the race of differently-treated co-workers. In his response to Defendants' motion to dismiss, Blaise states that his EEOC interview[2] included his race (African-American) and the race of co-workers who were not punished for their alleged mistakes (white). (Pl.'s Mtn. to Toll the Statute of Limitations under Title VII of the Civil Rights Act of 1964 (Title VII) and the American Disability Act 42 U.S.C. (ADA) and Continue to Trial, Docket Nos. 14 & 15, 5) ("Pl.'s Resp.").[3] Blaise's belated interjection of these facts is too late: a Complaint may not be amended by his briefs in opposition to a motion to dismiss. Katz v. Odin, Feldman, & Pittleman, P.C., 332 F. Supp. 2d 909, 917 (E.D. Va. 2004), even under the liberal standards of pro se pleading. Additionally,

---

[2] This document is not in the record, with the Complaint or elsewhere.

[3] This document was filed twice: once as a motion (Docket No. 14) and once as a responsive brief (Docket No. 15).

9

even in his briefs, Blaise does not state that he was harassed because of his race.

Even under the liberal construction allowed in the case of pro se plaintiffs, Blaise's Complaint is completely devoid of any facts from which the Court can make a reasonable inference about the races of the employees in question. To the extent that Blaise's Complaint states a claim for § 1981 harassment, it will be dismissed without prejudice.

B.  **"Race, Color, and National Origin"**

The second count, labeled "Race, Color, and National Origin" states that

> Other employees … were making similar mistakes … but were not subjected to the same punishments I received. In addition, Mr[] Robert Swendrznski … received a raise … although we both … worked for Vibra Hospital for the same length of time. During the roll out of [the new system], Dr. Harris hired three … part time new pharmacists and started scheduling them more often and reduced my hours under the pretext that [V]ibra Hospital [cut] the pharmacy budget. In fact, Dr. Harris created the budget issue herself.

(Compl. 3). To the extent that Blaise states a claim for racial or national origin discrimination under Title VII, it is time-barred, and the Court declines to toll the statute of limitations, for the same reasons discussed above. Therefore, this claim will be dismissed with prejudice. To the extent that

10

Blaise states a claim for racial or national origin discrimination under § 1981, Blaise fails to state in his Complaint his own race, the race of differently-treated co-workers, and that he was discriminated against on the basis of his race. On this basis, this claim will be dismissed without prejudice.

Read liberally, Blaise may also be stating an Equal Pay Act claim. (Compl. 3) ("Mr[] Robert Swendrznski … received a raise … although we both … worked for Vibra Hospital for the same length of time."). To successfully plead a prima facie case under the Equal Pay Act, a plaintiff must allege: (1) that his employer has paid different wages to employees of different races or national origins; (2) that said employees hold jobs that require equal skill, effort, and responsibility; and (3) that such jobs are performed under similar working conditions. See Gustin v. W. Virginia Univ., 63 Fed.Appx. 695, 698 (4th Cir. 2003) (relying on Brinkley v. Harbour Recreation Club, 180 F.3d 598, 613 (4th Cir. 1999) (citing Corning Glass Works v. Brennan, 417 U.S. 188, 189 (1974))). Additionally, "to make out a prima facie case under the EPA, the burden falls on the plaintiff to show that the skill, effort and responsibility required in her job performance are equal to those of a higher-paid" employee of a different race or national origin. Wheatley v. Wicomico Cty., Maryland, 390 F.3d 328, 332 (4th Cir. 2004).

There are two fatal flaws in Blaise's Equal Pay Act claim. First, as with the § 1981 claim, Blaise failed to state his race or the race of Swendrznski in the Complaint. Second, any Equal Pay Act claim is time-barred. Although Equal Pay Act complaints need not go through the EEOC before coming to federal court, they must be filed within two years of the last discriminatory paycheck. 29 U.S.C. § 255(a); Taylor v. Millennium Corp., No. 1:15-CV-1046, 2016 WL 927185 (E.D. Va. Mar. 4, 2016) (relying on Brinkley-Obu v. Hughes Training, Inc., 36 F.3d 336, 345-46 (4th Cir. 1994). Blaise was terminated on December 18, 2013 and brought this suit on January 12, 2016. As with the Title VII claims, the Court sees no equitable reason to toll the statute of limitations for this claim. On this basis, Blaise's Equal Pay Act claim will be dismissed with prejudice.

C. "Disability"

On the third count, labeled "Disability," Blaise pleads that

> [t]his is based on the belief or presumption of a positive HIV medical condition. On approximately May 14th, 2013, I received a job offer with PharMerica Corporation at Kindred Hospital, now Vibra Hospital. Ms. Cindy Frederick, Senior Pharmacy Recruiter ... sent me a hiring package list ot do a physical exam and a drug test. On May 15, I went to Concentra Medical Centers ... to do the urine drug test and a physical exam. At Concentra ... the nurse ... drew some blood. The result of the medical exam was sent to PharMerica, but the infection disease nurse

12

>manager [wanted] a copy [of] the medical record [which Concentra did not provide]. In the meantime, rumors were spreading at the hospital that I was sick of HIV … After several failed attempts to get my medical records, I started threatening to file a lawsuit against Concentra … Pharmerica and Vibra Hospital. As the rumor of me having HIV spread[], Dr. Harris was making [an] effort to terminate my position as pharmacist.
>
>Vibra Hospital … illegally terminated me from my employment because of the spread of the rumors and my complaints of filing a lawsuit. My employment termination was based upon false and pretextual reasons in retaliation for the threats to file a lawsuit, and the rumors.

(Compl. 3-4).

To the extent that Blaise intends to state a claim for Americans With Disabilities Act ("ADA") discrimination, harassment, retaliation, or retaliatory harassment, such a claim is time-barred for the same reasons discussed above with regard to Blaise's Title VII claims, and there is no equitable basis upon which to toll the statute of limitations. This claim will be dismissed with prejudice.[4]

D. **"Vibra Hospital of Richmond Violates its own Policy"**

---

[4] Section 1981 does not present an alternate cause of action for this claim because that provision only guarantees racial non-discrimination. 42 U.S.C. § 1981(a) ("All persons … shall have the same right[s]… as … enjoyed by white citizens."); Clement v. Satterfield, 927 F. Supp. 2d 297, 307 (W.D. Va. 2013).

13

On the fourth count, labeled "Vibra Hospital of Richmond Violates its own policy," Blaise pleads that

> On or around November 27th, 2013 I was brought before a counseling board for job performance evaluation … At the end of the meeting, I was given a warning and 30 day[] period to improve. My employment was terminated after 2 weeks of working and was in violation of the company['s] established policy.

(Compl. 4). This is apparently intended to state a state law wrongful termination claim.

In Virginia, claims for wrongful termination are governed by the Virginia Human Rights Act ("VHRA"), Code §§ 2.1-714 et seq. Conner v. Nat'l Pest Control Ass'n, Inc., 257 Va. 286, 288, 513 S.E.2d 398, 398-99 (1999). The statute of limitations for a wrongful termination suit under the VHRA is two years. Purcell v. Tidewater Const. Corp., 250 Va. 93, 94, 458 S.E.2d 291, 292 (1995); Baiden-Adams v. Forsythe Transp., Inc., 969 F. Supp. 2d 422, 432 n.6 (E.D. Va. 2013); Michael v. Sentara Health Sys., 939 F. Supp. 1220 (E.D. Va. 1996). As discussed previously, Blaise has not pled any equitable basis upon which to toll the statute of limitations. Blaise's wrongful termination claim is time-barred; this claim will be dismissed with prejudice.

E. **Claims Against Harris**

Defendants are correct that employees cannot be held liable in their individual capacities for violations of Title VII and

14

the ADA. Boykin v. Virginia, No. 3:14CV811-HEH, 2015 WL 5020896, at *4 (E.D. Va. Aug. 20, 2015), aff'd sub nom. Boykin v. Virginia Dep't of Juvenile Justice, 641 F. App'x 221 (4th Cir. 2016) (relying on Lissau v. So. Food Serv., Inc., 159 F.3d 177, 180-81 (4th Cir. 1998) (Title VII); Baird v. Rose, 192 F.3d 462, 472 (4th Cir. 1999) (ADA)). Therefore, to the extent that Blaise states a claim against Harris under Title VII or the ADA, those claims will be dismissed with prejudice.

However, Defendants are incorrect in asserting that § 1981 does not "provide for individual liability." (Def.'s Mem. 8). Supervisors may be individually liable where: (1) the supervisor "authorize[s], direct[s], or participate[s] in a discriminatory act"; (2) the supervisor's act or omission which resulted in the infringement of rights was intentional, and plaintiff makes an affirmative showing of that fact; and (3) the plaintiff establishes the elements of a prima facie case for retaliation. Tibbs v. Baltimore City Police Dep't, No. CIV.A. RDB-11-1335, 2012 WL 3655564, at *6 (D. Md. Aug. 23, 2012) (relying on Atkins v. Winchester Homes, CCB-06-278, 2007 WL 269083, at *9 (D. Md. Jan. 17, 2007) (quoting Manuel v. Int'l Harvester Co., 502 F. Supp. 45, 50 (N.D. Ill. 1980))).[5]

---

[5] The Fourth Circuit in Tillman v. Wheaton-Haven Recreation Ass'n, Inc., 517 F.2d 1141 (4th Cir. 1975), squarely answered the

15

> question of whether individual liability is allowed under 42 U.S.C. § 1981. In <u>Tillman</u>, black applicants challenged a nonprofit swimming pool association's discriminatory membership policies. <u>See</u> 517 F.2d at 1142. The plaintiffs also sued the directors of the nonprofit association under 42 U.S.C. § 1981 claiming that these individuals had established and enforced the discriminatory policies. <u>See</u> <u>Tillman</u>, 517 F.2d at 1142.
>
> When the directors challenged their individual liability for these acts, the Fourth Circuit held that "directors become personally liable when they intentionally cause a corporation to infringe the rights secured by 42 U.S. C.... § 1981." ... <u>Tillman</u>, 517 F.2d at 1146. Other circuits have held similarly. <u>See</u> <u>Patterson v. County of Oneida, New York</u>, 375 F.3d 206, 226 (2d Cir.2004) ("[A]lthough ... Title VII claims are not cognizable against individuals, individuals may be held liable under § 1981 ... for certain types of discriminatory acts, including those giving rise to a hostile work environment.") (citations omitted); <u>Allen v. Denver Pub. Sch. Bd.</u>, 928 F.2d 978, 983 (10th Cir.1991) (an individual defendant can be held liable under § 1981 if the individual defendant was personally involved in the discriminatory conduct); <u>Johnson v. Chapel Hill Indep. Sch. Dist.</u>, 853 F.2d 375, 381 (5th Cir.1988) ("A supervisor can be held personally liable for violations of § 1981 ... only upon proof that he intentionally discriminated against the plaintiff.")

<u>Shazier v. Sw. Virginia Reg'l Jail Auth.</u>, No. CIV.A. 1:08CV00037, 2009 WL 416005, at *5 (W.D. Va. Feb. 17, 2009), <u>report and recommendation adopted,</u> No. CIV. A. 1:08CV00037, 2009 WL 674385 (W.D. Va. Mar. 12, 2009).

    The Fourth Circuit's adoption of individual liability for board members in <u>Tillman</u>, together with the decisions of sister Courts of Appeals and of district courts within the Fourth Circuit Court of Appeals, demonstrate that § 1981 encompasses

16

However, as explained above, the Complaint does not state a prima facie claim for harassment or discrimination under § 1981, and that is true as much for Harris individually as it is for Vibra as an employer. Accordingly, those claims ("Harassments" and "Race, Color, and National Origin") will be dismissed without prejudice to the extent that they are intended to be brought under § 1981.

## MISCELLANEOUS

At the conclusion of his response to the Defendants' motion, Blaise includes a "Motion to Summon Witnesses." (Pl.'s Resp. 6-8). This is inappropriate for two reasons. First, the Court will dismiss all of Blaise's claims. Second, subpoenas are a form of discovery, and all discovery is forbidden until the parties have conducted a discovery conference pursuant to Fed. R. Civ. P. 26(f). Fed. R. Civ. P. 26(d). To the extent that Blaise seeks to compel witnesses, his request is denied.

## CONCLUSION

For the reasons stated above, Defendants' MOTION TO DISMISS (Docket No. 10) will be granted.

To the extent that count one, "Harassments," seeks relief under Title VII, that claim will be dismissed with prejudice. To the extent that count one, "Harassments," seeks relief under 42

---

supervisor liability, subject to the requirements stated in Tibbs, 2012 WL 3655564, at *6.

17

U.S.C. 1981, that claim will be dismissed without prejudice. To the extent that count two, "Race, Color, and National Origin," seeks relief under Title VII, that claim will be dismissed with prejudice. To the extent that count two, "Race, Color, and National Origin," seeks relief under 42 U.S.C. 1981, that claim will be dismissed without prejudice. To the extent that count two, "Race, Color, and National Origin," seeks relief under the Equal Pay Act, that claim will be dismissed with prejudice. To the extent that count three, "Disability," seeks relief under the Americans With Disabilities Act, that claim will be dismissed with prejudice. To the extent that count four, "Vibra Hospital of Richmond Violates its own policies," seeks relief for wrongful termination, that claim will be dismissed with prejudice.

It is so ORDERED.

　　　　　　　　　　　　　　　　　　／s／　　　/REP/
　　　　　　　　　　　　　　　　Robert E. Payne
　　　　　　　　　　　　　　　　Senior United States District Judge

Richmond, Virginia
Date: August 10, 2016